**CHESAPEAKE & O. RY. CO. v. RICHARDSON.**

No. 8388.

Circuit Court of Appeals, Sixth Circuit.

Jan. 10, 1941.

Ben B. Wickham, of Cleveland, Ohio· (Boyd, Brooks & Wickham and Ben B. Wickham, all of Cleveland, Ohio, on the brief), for appellant.

M. C. Harrison, of Cleveland, Ohio (Harrison & Marshman and M. C. Harrison, all of Cleveland, Ohio, on the brief), for appellee.

Before HICKS, HAMILTON, and MARTIN, Circuit Judges.

HAMILTON, Circuit Judge.

Appellant, the Chesapeake & Ohio Railway Company, appeals from a judgment of $6,000 for personal injuries recovered by the appellee, Elmer Richardson, under the provisions of the Federal Employers' Liability Act, 45 U.S.C.A. §§ 51–59. He was concededly injured while engaged in interstate commerce and the case is within federal jurisdiction.

Appellee had been employed by the appellant for nine years and at the time of the accident had been a member of a track repair and service crew since 1928 which operated under the supervision of a foreman. On the morning of the accident, he was pulling spikes when the foreman directed him to assist two other men who were cutting a steel rail with a chisel. The rail had been cut originally with an acetylene torch but had cracked and split and, on explicit directions from the supervisor, the defective end was being chiseled off by a cutting crew consisting of three men, two alternating in swinging sledges and one holding the chisel. After one side was cut, appellee was directed by the foreman to turn the rail so the upper part or ball would be exposed and adjust it "workwise" on the angle bar for the

cutters, which he did and after this adjustment, started to walk to a safe distance when he heard the sledges strike and startled, turned half way around and a sliver of steel struck him in the right eye, totally destroying the sight. The foreman had given instructions to the men cutting that they should at all times give the man turning the rail sufficient time to get in the clear and the employees who did the adjusting were instructed to get far enough away to be in the clear.

There is substantial evidence in the record that it was unsafe to have the face turned toward the chiseling within thirty feet without goggles and that appellee requested the cutters to wait until he got in the clear before striking the chisel.

Appellant assigns the following points:

1. That appellee assumed the risk and there is no substantial evidence of negligence.

2. Failure of the court to charge on assumption of risk and its instruction to the jury, which was later withdrawn on the duty of appellant to furnish appellee with goggles.

3. Misconduct of appellee's counsel in closing argument.

■ The concept underlying the employee's assumption of risk is essentially that of an implied agreement to accept responsibility for any bodily injury which may result from exposure to the ordinary risks of the employment and those not ordinarily so incident, of which he has actual or constructive knowledge with full appreciation of the dangers that may flow therefrom. The theory upon which contributory negligence is held to preclude an employee from recovery is that he is guilty of imprudence in the premises which partially or entirely causes his injury.

■ Stated another way, contributory negligence is the doing of some act or omission by the employee amounting to a want of ordinary care for his own safety, which is the proximate cause of his injury though concurrent with some negligent act of the employer. Assumed risk refers to a general course of action in connection with the employer's way of doing business or the use of appliances furnished by him. Contributory negligence refers to the question as to whether the employee acted prudently in connection with matters that arose for his consideration during the course of his employment and under circumstances not contemplated by him as a part of the employment. Assumption of risk rests upon the intelligent acquiescence and knowledge of the danger and appreciation of the risk naturally incident to the employment of or arising from a particular situation in which the work is done. It negatives the prima facie liability of the employer and does not involve the creation of the peril by the employee. Narramore v. Cleveland C. C. & St. L. Ry. Co., 6 Cir., 96 F. 298, 48 L.R.A. 68.

■■ It is the duty of the employer to exercise due care to protect his employees from injury and with this end in view whenever the character of the work is complex and dangerous, he should safeguard them by the adoption of approved methods to lessen the risk of injury. It is implied by every contract of employment that the employee will obey the lawful rules, orders and instructions of the employer, which promote his safety, and where the employer has adopted an approved method for doing hazardous work, the burden of assumption of risk is removed from the employee, except as to the approved method.

■ Where an employee is injured through the negligence of a co-employee, by failure to follow the employer's approved method for doing hazardous work, eliminating the fellow servant rule, the employer will be liable.

■ Appellant directed its employees cutting the rail to use goggles and furnished them and appellee's superior ordered the cutting employees to refrain from striking with their sledges until the employees adjusting the rail had reached a distance safe from flying chips. There is no evidence in the record that appellee had at any time of his own volition stayed within the dangerous range of the flying slivers of steel. At the time he was injured, appellee was within the danger range. Appellee's conduct viewed as a whole and in the light of the evidence most favorable to him, negatives the defense of assumed risk. Choctaw, Oklahoma & Gulf Railroad Company v. McDade, 191 U.S. 64, 68, 24 S.Ct. 24, 48 L.Ed. 96; St. Louis & S. F. Ry. Co. v. Jeffries, 8 Cir., 276 F. 73.

■ Contributory negligence under the Employers' Liability Act does not constitute a complete defense, but by the

terms of the statute, the amount of damages recoverable must be diminished in proportion to the amount of the negligence attributable to the employee. Where the injuries are due solely to the employee's own negligence and where it is shown there is nothing to extenuate his conduct or confuse his judgment and his duty is as clear as its performance is easy and he knows not only the imminent danger of the situation but how it can be averted, the statute has no application and there is no legal ground for a comparison of negligence on the part of the employer and employee. Gila Valley Ry. Company v. Hall, 232 U.S. 94, 102, 34 S.Ct. 229, 58 L.Ed. 521; Chesapeake & Ohio Ry. Co. v. Kuhn, 284 U.S. 44, 46, 52 S.Ct. 45; 76 L.Ed. 157.

■ Appellant insists that the present facts bring the case at bar within the latter part of the above rule, and that the sole cause of appellee's injury was his failure to exercise ordinary care for his own safety. The undisputed facts show that appellee's co-workers had departed from the method adopted by appellant at the very moment of the accident. If they had desisted from striking the chisel until he had reached a point of safety or had an opportunity to do so, he would not have been injured. It is true that in turning his face toward the chiselers, appellee contributed to his injury, but it would be emptying the statute of its meaning to say it did not result in part from the negligence of his co-workers. Union Pacific R. R. Co. v. Hadley, 246 U.S. 330, 333, 38 S.Ct. 318, 62 L.Ed. 751.

■ Acts done under the stimulus of sudden peril or in the case of an emergency requiring immediate decision are not to be measured by the same standard as where the actor has ample time for reflection and an intelligent choice of means. Appellee was not wholly free from danger of flying chips with any part of his body near the cutting and his involuntary turning when he heard the sledges strike is not to be weighed by the standard which would apply if he had time for reflection and deliberation. We are not impressed with appellant's contention that, excluding his eyes, his risk was no greater than that of the cutters. Striking the chisel was no part of his duty and while the employees thus engaged may have assumed that risk, it does not follow as a matter of law that he did. In our opinion he was placed in a position of sudden peril without sufficient time for the development of understanding or the application of pre-existing knowledge. The questions of assumed risk or appellee's negligent act being the sole cause of his injury were for the jury. Sandri v. Byram, 6 Cir., 30 F.2d 784.

■ Appellant requested the court to specially charge the jury that if it found from the evidence that appellee was an experienced employee in the cutting of rails with a chisel struck by a hammer and knew that chips were likely to fly during the operation and if he turned his face toward the work knowing the operation of striking the chisel was going on and would likely continue, he assumed the risk and could not recover. In refusing to charge in the exact language requested, the court committed no error as it correctly charged on the assumption of risk.

■ The court in its charge stated that a sufficient distance away to escape the risk and hazards of flying chips and slivers and to be considered "in the clear" was not definitely fixed in the evidence, but that Richardson had testified that 30 or 35 feet was his idea of a reasonably safe distance, and that if the cutters were instructed or understood that Richardson was to be given an opportunity of getting in the clear and failed to give him such opportunity before cutting "it seems to me it was negligence and if directly, because of it, Richardson was injured, he is entitled to recover." On appellant's objection to this part of the charge, the court said in the presence of the jury: "Yes, to afford safety to a man doing Richardson's work and exercising due precaution. If you think that does not dispose of it you had better take an exception."

Appellant insists that the court should have directed the jury that its negligence was to be measured by the position of appellee's body to the cutting tools instead of by distance. Appellant's foreman in charge of the work testified that the chips flew from the rail like "pellets out of a gun" and that he instructed the cutters they were to give the men whose duty it was to turn the rail or adjust it in place plenty of time to get away.

Distance was an element in the case according to the testimony, and the court's charge when fairly construed left it to the jury to determine from the evidence what was a safe distance. This was not error.

The court charged originally that the jury would take into consideration as an element of negligence the failure of appellant to furnish goggles to the appellee. Appellant's counsel requested the court to eliminate that part of its charge and appellee's counsel in the presence of the jury stated "we haven't asked and don't ask the court to make it an affirmative ground of negligence standing by itself." Thereupon the court further instructed the jury, "Very well, ladies and gentlemen, you will not be at liberty to consider whether the failure to provide goggles was an element of negligence. So that will be dismissed from the case as a ground of negligence."

Appellant insists that notwithstanding the withdrawal of the charge, it was prejudiced thereby. It took no exception to the court's last charge and if it had we think it would have been unavailing. The court did precisely what appellant requested and we cannot believe as it contends that the jury was misled. The instruction simplified and made clear the duty of the jury. Century Indemnity Company v. Shakespeare, 10 Cir., 74 F.2d 392.

Appellee took the deposition of three of appellant's employees before the trial and read parts of two of them at the trial. In the closing argument appellee's counsel, in referring to these three witnesses, stated: "There were three men who were right there and know what happened and they are their employees. Don't you suppose if they could contribute a single word that would help them out on that, they would be here testifying?"

Appellant's counsel objected and said, "The depositions of these men were taken by the plaintiff in this case and not offered." The court inquired, "Are these men within the range of the process of the court?" to which counsel for appellee replied, "Quite so, Your Honor. And if they think there is anything in those depositions that will help them on that issue, they could have either brought them here under process of the court, or else read the depositions if they saw fit." The court overruled appellant's objection to which it took an exception. Appellant now urges that this was such misconduct as prevented it from having a fair trial.

The relationship existing between appellant and the three witnesses was such that each of them might reasonably be presumed to possess knowledge bearing on the issues involved. The unexplained failure of a party to produce a witness under such circumstances is a fit subject for fair comment and may justify an inference unfavorable to the party in default. Wigmore on Evidence, sec. 285, p. 368; Kierce v. Central Vermont Railway, 2 Cir., 79 F.2d 198; Lord & Spencer v. Stout Co., 1 Cir., 33 F.2d 60. It is a settled rule that counsel must restrict himself to the record for his facts and resort only to reason for his deductions, but within these limits freedom of ample argument is maintained. The extent of allowable comment rests largely in the trial court's discretion. There is no abuse here.

Judgment affirmed.