## DENNIS *v.* DENVER & RIO GRANDE WESTERN RAILROAD CO.

No. 25.   Argued November 19, 1963.—Decided December 9, 1963.

*Wayne L. Black* argued the cause for petitioner.   With him on the brief were *Calvin W. Rawlings, Harold E. Wallace, Brigham E. Roberts* and *John L. Black.*

*Clifford L. Ashton* argued the cause for respondent. With him on the brief were *Dennis McCarthy* and *Grant Macfarlane, Jr.*

Per Curiam.

Petitioner, a section laborer employed by respondent railroad, brought this suit under the Federal Employers' Liability Act, 35 Stat. 65, as amended, 45 U. S. C. § 51 *et seq.,* in a Utah State Court to recover damages for personal injury sustained as a result of respondent's alleged negligence.   The jury, finding respondent negligent and petitioner contributorily negligent, assessed "general damages" at $20,000 and deducted $10,000 "by reason of contributory negligence," leaving a verdict of $10,000 for petitioner.   The Supreme Court of Utah vacated the jury verdict and ordered the entry of judgment for respondent.

13 Utah 2d 249, 372 P. 2d 3. We granted certiorari, 371 U. S. 946, to consider whether the Supreme Court of Utah erred in its action.

From the evidence adduced at trial the jury could have concluded that: Petitioner was required to work from about 5 p. m. to about 5 a. m. in temperatures ranging from 10° Fahrenheit to minus 5° Fahrenheit, in 10 inches of snow, with "the wind a-blowing pretty hard," to repair a damaged section of railroad track; petitioner was dressed less warmly than the other members of the crew, and the foreman knew this; the only source of heat (outside of the cab of the truck which had transported the crew to the worksite) was a fire built from a single railroad tie, which did not give "very much" heat; at about midnight, petitioner, while handling a cold wrench, noticed that "two [of his] fingers were clamped shut and [he] had to pull them apart . . . before [he] could get [his] glove off"; he also noticed a "kind of burning, tingling sensation" in these fingers; although he communicated some or all of this to the foreman, petitioner was permitted to continue working on the track for about three and one-half hours; he spent only about one-half hour in the heated cab of the truck; as a result of this exposure, petitioner suffered frostbite and lost two fingers.

There can be little dispute that these facts, if believed, establish negligence by respondent railroad, since they show that the foreman, who had full control over petitioner's activities while on this job, did not take all necessary and reasonable precautions to prevent injury to petitioner when put on notice of his condition. *Lavender* v. *Kurn,* 327 U. S. 645; *Boston & M. R. Co.* v. *Meech,* 156 F. 2d 109, cert. denied, 329 U. S. 763.

It is true that there was evidence in conflict with petitioner's version of what occurred. For example, other members of the work crew testified that immediately after

his complaint petitioner was transferred to the heated cab where he stayed until the end of the job, whereas petitioner testified that after his complaint he spent only one-half hour in the heated cab and three and one-half hours working outside. There was also evidence from which the jury could reasonably have concluded that petitioner's own negligence was the sole cause of his injury. But in FELA cases this Court has repeatedly held that where "there is an evidentiary basis for the jury's verdict, the jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion." *Lavender* v. *Kurn, supra,* at 653. "Only when there is a complete absence of probative facts to support the conclusion reached [by the jury] does a reversible error appear." *Ibid.* Once it is shown that "employer negligence played any part, even the slightest, in producing the injury," *Rogers* v. *Missouri Pac. R. Co.,* 352 U. S. 500, 506, a jury verdict for the employee may not be upset on the basis of his own negligence, no matter how substantial it may have been, although the jury may, of course, take petitioner's contributory negligence into account, as it did here, in arriving at the final verdict.

In this case, petitioner's evidence, though vigorously disputed, was sufficient to support the jury's conclusion that respondent's negligence contributed to the injury. Hence, "the appellate court's function [was] exhausted," *Lavender* v. *Kurn, supra,* at 653, and it could not properly substitute its judgment for that of the jury and decide, as the Supreme Court of Utah did here, that "it seems quite inescapable that it was [petitioner's] own conduct . . . that resulted in this regrettable injury." 13 Utah 2d, at 255; 372 P. 2d, at 7.

The judgment of the Supreme Court of Utah is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

Mr. Justice Douglas, with whom Mr. Justice Harlan concurs, dissenting.

The cases cited by the Court to reverse the Utah Supreme Court are familiar ones that involve the duty of an employer to provide the employee with a safe place to work. *Lavender* v. *Kurn,* 327 U. S. 645, 651–653; *Boston & M. R. Co.* v. *Meech,* 156 F. 2d 109, 111–112. That issue was covered by the instructions to the jury in the present case.* But as I·read the record there is no evidence of negligence on the issue of "a reasonably safe place in which to work." In this case each workman furnished his own clothes. If it were the custom of the railroad to furnish gloves or other clothes to the employees or if, under a collective bargaining agreement, it had become its duty to do so and petitioner had been issued faulty garments, we would have a different case. We would also have a different case if failure to furnish an employee with certain kinds of equipment were tantamount to a failure to provide him a safe place to work. See, *e. g., Williams* v. *Atlantic Coast Line R. Co.,* 190 F. 2d 744; *Young* v. *Clinchfield R. Co.,* 288 F. 2d 499; *Ferrara* v. *Boston & M. R. Co.,* 338 Mass. 323, 155 N. E. 2d 416. But no such issue is tendered here.

---

*"It is the duty of a railroad company to exercise reasonable care in furnishing its employees with a reasonably safe place in which to work. This duty does not require the absolute elimination of all danger, but it does require the elimination of all dangers which the exercise of reasonable care would remove or guard against.

"In this connection, you are instructed that if you find from a preponderance of the evidence, that the railroad company failed to exercise reasonable care in that it subjected plaintiff to unreasonable exposure to. harm from weather conditions, then you are instructed that defendant was negligent in failing to discharge its duty as hereinabove set forth; and if you further find that such negligence, if any, in whole or in part, proximately caused plaintiff to sustain injuries, then you should return a verdict in favor of the plaintiff and against defendant and assess damages in accordance with these instructions."

The weather was bitter, and the emergency job of repairing a section of a damaged rail could only be done outdoors. But there was a heated truck cab for protection against the weather and outdoors there was a fire. There is nothing to suggest that petitioner was barred from using either, that pressures were put on him to remain outdoors and away from the fire or the heated cab, or that disciplinary measures would be used against those who took frequent recesses to keep warm. Rather, it was admitted that the men generally took turns using the fire and that each was the best judge of when he should warm himself.

Knowledge of the foreman that petitioner was dressed less warmly than the other crew members would be relevant if it were coupled with the foreman's insistence that he perform labor for which his attire was not suitable. That, too, is a different case. The strongest possible case for petitioner, as the Court says, is that he was "permitted" to continue working after his fingers, with the knowledge of the foreman, became very cold. But unless employers are to become insurers of these industrial accidents, that is no evidence of negligence in a society where everyone is presumed to have enough sense "to come in out of the rain."

Mr. Justice Harlan, dissenting.

I do not believe this case should have been taken for review and I now dissent from the reversal of the judgment of the Utah Supreme Court, for reasons already expressed in past cases of this type. See *Rogers* v. *Missouri Pac. R. Co.*, 352 U. S. 500, 559; *Webb* v. *Illinois Central R. Co.*, 352 U. S. 512, 559; *Ferguson* v. *Moore-McCormack Lines, Inc.*, 352 U. S. 521, 559; *Arnold* v. *Panhandle & S. F. R. Co.*, 353 U. S. 360, 361; *Harris* v. *Pennsylvania R. Co.*, 361 U. S. 15, 25; *Davis* v. *Virginian R. Co.*, 361 U. S. 354, 358; *Michalic* v. *Cleveland Tankers, Inc.*, 364 U. S. 325, 332;

*Gallick* v. *Baltimore & Ohio R. Co.,* 372 U. S. 108, 122; *Basham* v. *Pennsylvania R. Co.,* 372 U. S. 699, 701.

In this instance we are not even precisely informed by the Court's opinion wherein the respondent's conduct was negligent. The means for requiting unfortunate industrial accidents of this sort should be found not in destroying the supervisory power of the courts over jury verdicts unsupported by evidence of employer fault, but in legislative expansion of the concepts of workmen's compensation laws, under which compensation is not dependent upon a showing of employer negligence. Cf. *Gallick* v. *Baltimore & Ohio R. Co., supra.*