992 So.2d 1094 (2008)
Sherry D. ALDAY
v.
CSXT TRANSPORTATION, INC.
No. 2007-CA-1308.
Court of Appeal of Louisiana, Fourth Circuit.
September 24, 2008.
Rehearing Denied November 5, 2008.
*1095 Joseph M. Miller, Benjamin B. Saunders, William J. Billeaud, Davis Saunders, PLC, Mandeville, LA, for Sherry D. Alday.
Brent A. Talbot, Douglas L. Grundmeyer, Douglas R. Holmes, Chaffe McCall, LLP, New Orleans, LA, for CSX Transportation, Inc.
(Court composed of Judge JAMES F. McKAY, III, Judge MICHAEL E. KIRBY, Judge TERRI F. LOVE).
TERRI F. LOVE, Judge.
Sherry Alday, an employee of CSX Transportation, Inc., was injured during a train derailment. CSX Transportation, Inc. moved for an involuntary dismissal asserting that no evidence was produced to prove its negligence. The trial court *1096 granted the involuntary dismissal. Sherry Alday appeals averring that the trial court committed manifest error in granting the involuntary dismissal and that CSX Transportation, Inc. was partially negligent. We find that the trial court did not commit manifest error in granting the involuntary dismissal and affirm.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY
Sherry Alday ("Ms. Alday"), an employee of CSX Transportation, Inc. ("CSX"), was injured when a rail car derailed, pinning her beneath the rail car. Ms. Alday, serving as the conductor/switchman, and William Grimes ("Mr. Grimes"), the engineer, were ordered to place rail cars on the Michoud storage track. This required Ms. Alday to ensure that all rail switches were lined correctly to place the rail cars on the right track to back them into the storage facility.
Prior to arriving in New Orleans, Ms. Alday requested assistance from Edward Benton ("Mr. Benton"), the trainmaster in Mobile, at the Michoud facility. Mr. Benton arranged for John Mayeaux ("Mr. Mayeaux"), the trainmaster in New Orleans, to assist Ms. Alday. Upon arrival at the Michoud facility, Mr. Mayeaux contacted Ms. Alday on the radio. Mr. Mayeaux instructed Ms. Alday to make sure that the switches on the rail line were all lined to send the rail cars onto the storage track.
Ms. Alday checked the switches from the back of the rear rail car where she was hanging onto the ladder while holding a lantern. Believing that all the switches were lined correctly, she ordered Mr. Grimes to begin backing up the rail cars. Ms. Alday realized that a switch was not in position with the other switches and radioed to Mr. Grimes: "That'll do. That'll do. Derail." However, the emergency stop on the train could not prevent the rail cars from hitting the derail device. The derailed rail car pinned Ms. Alday to the ground around her thighs.
Based upon the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51, Ms. Alday filed a petition for damages resulting from her personal injuries. During a bench trial, CSX moved for an involuntary dismissal at the close of Ms. Alday's case-in-chief, which the trial court granted. The trial court stated that Ms. Alday failed to provide evidence of CSX's alleged negligence and cast Ms. Alday with all taxable costs.
Ms. Alday filed a motion for rehearing on CSX's involuntary dismissal or motion for new trial. The trial court denied the motion, but ordered a distribution of the registry funds. Ms. Alday filed a devolutive appeal.

STANDARD OF REVIEW
Appellate courts review involuntary dismissals using the manifest error standard of review. Ridgeway v. Pierre, 06-0521, p. 4 (La.App. 4 Cir. 1/11/07), 950 So.2d 884, 888. "[W]here two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong." Stobart v. State, Through Dept. of Transp. and Dev., 617 So.2d 880, 883 (La.1993). Thus, a reversal requires that no reasonable factual basis exist for the trial court's findings. Mart v. Hill, 505 So.2d 1120, 1127 (La. 1987).

INVOLUNTARY DISMISSAL
CSX moved for an involuntary dismissal following the close of Ms. Alday's case-in-chief. CSX must provide Ms. Alday with a safe workplace pursuant to FELA. Manasco v. Nat'l R.R. Passenger Corp., 06-0976, p. 4 (La.App. 4 Cir. *1097 12/29/06), 948 So.2d 1138, 1142. Ms. Alday avers that CSX was negligent by failing to provide proper lighting at the storage track facility and failing to provide adequate assistance. Ms. Alday must show that 1) she was injured while working; 2) in the furtherance of interstate commerce; 3) negligence on behalf of CSX; and 4) that CSX's negligence partially caused her injuries in order to prevail on her FELA claim. Id., 06-0976, p. 5, 948 So.2d at 1142. Ms. Alday's own negligence is not a total bar to her recovery in a FELA action. E'Teif v. Nat'l R.R. Passenger Corp., 98-2503, p. 7 (La.App. 4 Cir. 4/22/99), 733 So.2d 155, 159.
Ms. Alday testified that she could have and should have walked along the switches to ensure that they were all correctly lined. However, Ms. Alday stated that she "didn't think about" walking the switches to check the alignment. Ms. Alday testified that lantern lighting was the common lighting method used by conductors. Additionally, the darkness of the storage facility was commonplace. Further, Ms. Alday testified that she thought she had sufficient light. Finally, Ms. Alday testified that the derailment was her fault and that there was no defective equipment and no failure to give warnings, signals, or protections.
During the post-accident interview, Ms. Alday stated that she should have walked along the switches to check the alignment and, in regards to the incorrect switch alignment, she stated: "I did that, but me that's my fault I'll take the blame for that." She also stated that she had her lantern. On the employee incident report, Ms. Alday stated that she was at fault because she "failed to see that the switch wasn't lined." She also indicated that she had a safe place to work.
Mr. Mayeaux testified that if Ms. Alday was unsure about the direction of the switches, as he communicated with her via radio, that she should have stopped and checked the switches on foot. He stated that she was in the best position to prevent a derailment. Further, Mr. Mayeaux testified that Ms. Alday had sufficient lighting.
Mr. Benton testified that trainmasters are not allowed to relay the position of switches. He also stated that Ms. Alday should have exited the rail car and checked the direction of the switches on foot.
Mr. Grimes testified that Ms. Alday could have exited the rail car and read the direction of the switches while walking. Additionally, he stated that he and Ms. Alday "work in the dark" and that they knew they would have to work in the dark.
No evidence in the record established that CSX provided an unsafe workplace. In fact, Ms. Alday stated that she had a safe place to work. Although Ms. Alday's own fault is not a bar to her recovery, the record is devoid of evidence of CSX's alleged partial negligence. Given the testimony regarding the standard lighting, the assistance provided by Mr. Mayeaux via radio, and the admissions of fault by Ms. Alday, we do not find that the trial court committed manifest error in granting CSX an involuntary dismissal.

DECREE
For the above mentioned reasons, we find that the trial court did not err in granting CSX an involuntary dismissal and affirm.
AFFIRMED.